EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos E. Placer Román<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Recurridos | Certiorari<br><br>2015 TSPR 131<br><br>193 DPR ____ |

Número del Caso: CC-2012-949

Fecha: 1ro de octubre de 2015

Tribunal de Apelaciones:

>Región Judicial de Caguas, Panel X

Abogada de la Parte Peticionaria:

>Lcda. Ivonne L. Arias Martínez

Oficina de la Procuradora General:

>Lcda. Margarita Mercado Echegaray
>Procuradora General
>
>Lcda. Karla Pacheco Álvarez
>Subprocuradora General
>
>Lcda. Carmen A. Riera Cintrón
>Procuradora General Auxiliar

Materia: Sentencia con Opiniones de Conformidad y Opinión Concurrente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Placer Román

      Peticionario

        v.             CC-2012-949

                                   *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

      Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 1 de octubre de 2015.

Se revoca la Sentencia del Tribunal de Apelaciones, se expide el *mandamus* y se ordena eliminar al señor Carlos E. Placer Román del Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal. La Jueza Presidenta señora Fiol Matta emitió una Opinión de Conformidad, a la que se une el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Martínez Torres emitió una Opinión de Conformidad. El Juez Asociado señor Estrella Martínez emitió una Opinión Concurrente. La Juez Asociada señora Rodríguez Rodríguez disintió sin opinión escrita. El Juez Asociado señor Kolthoff Caraballo no intervino.

María I. Colón Falcón
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Placer Román

       Peticionario

      v.

                              CC-2012-949       *Certiorari*

Estado Libre Asociado de
  Puerto Rico y otros

       Recurridos

Opinión de Conformidad emitida por la Jueza Presidenta señora Fiol Matta, a la cual se une el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 1 de octubre de 2015.

La Ley 243-2011 eliminó el delito de actos lascivos o impúdicos cometidos contra una persona adulta de la lista de delitos que activan la obligación de inscribir al convicto en el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores.* Por esa razón, estoy conforme con la decisión mayoritaria de expedir el *mandamus y* ordenar eliminar al señor Carlos Placer de dicho Registro.

I

El señor Carlos Placer Román fue declarado culpable de cometer el delito de actos impúdicos o lascivos contra una persona mayor de edad por hechos ocurridos el 1 de junio de 1998.[1] El 29 de diciembre de 1999, el Tribunal de Primera Instancia lo sentenció a cumplir una pena de seis años de prisión y ordenó la suspensión de la sentencia de cárcel al amparo de la Ley Núm. 259 de 3 de abril de 1946, según enmendada, conocida como Ley de Sentencia Suspendida y Libertad a Prueba.[2] Entre otras condiciones, la sentencia emitida por el Tribunal de Instancia ordenó que el señor Placer Román fuera inscrito en el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores* (Registro).[3]

---

[1] Art. 105(d) del Código Penal de 1974, 33 LPRA sec. 4067. El inciso (d) dispone:

> "Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra será sancionada con pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:
>
> ....
>
> (d) Si la víctima fuere compelida al acto mediante el empleo de medios engañosos que anulen o disminuyan sustancialmente, sin su conocimiento, su capacidad de resistencia".

[2] 34 LPRA sec. 1027.

[3] Entre las condiciones que debía cumplir el señor Placer Román estaban: permanecer dentro de la jurisdicción del Estado Libre

(continúa...)

Según el certificado expedido por la Administración de Corrección y Rehabilitación, Programa de Comunidad de San Juan, la sentencia del señor Placer Román se cumplió el día 29 de diciembre de 2005. El 17 de junio de 2011, el señor Placer Román presentó una petición de *mandamus* en la cual solicitó al Tribunal de Primera Instancia que ordenara al Departamento de Justicia, a la Administración de Corrección, a la Policía de Puerto Rico y a la Junta de Libertad Bajo Palabra eliminar su nombre del *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores*. Además, pidió una indemnización en daños conforme al artículo 659 del Código de Enjuiciamiento Civil de 1993.[4]

El señor Placer Román planteó que su nombre no debió haberse incluido en el Registro pues el delito por el cual fue convicto no era uno de los delitos incluidos en la Ley 28-1997, aplicable al momento de dictarse sentencia en su contra. Además, la ley disponía que la información debía aparecer en el Registro durante un periodo de diez años desde que se comenzara a cumplir la sentencia bajo el beneficio de libertad a prueba, lo cual quería decir, en

---

Asociado de Puerto Rico; comparecer regularmente ante un Técnico de Servicios Sociopenales del Programa de Comunidad de la Administración de Corrección; mantenerse empleado o estudiando; abstenerse del uso de sustancias controladas y el consumo de alcohol.

[4] 32 LPRA sec. 343.

su caso, diez años a partir del 29 de diciembre de 1999.[5] Por esta razón, el peticionario comenzó a hacer gestiones para lograr que su nombre fuera removido del Registro a partir del 29 de diciembre de 2009.[6]

Las personas a cargo del Registro de Ofensores Sexuales y del Departamento de Corrección se negaron a borrar el nombre del peticionario del Registro porque según la ley que estaba vigente al momento de la petición, Ley 266-2004, el periodo de diez años de registro comenzaba a transcurrir desde que se terminara de cumplir la sentencia y no desde que el convicto saliera a la libre comunidad en virtud del beneficio de libertad a prueba, como disponía la ley anterior. Además, la Ley de 2004 requería una orden judicial para eliminar del Registro el nombre e información del convicto.[7] De acuerdo a esta

---

[5] El señor Placer Román fue sentenciado el 29 de diciembre de 1999. El artículo 5 de la Ley 28-1997, vigente al momento de la sentencia, dispone en lo pertinente:

> La información de la persona convicta por los delitos enumerados en el inciso (a) del Artículo 3 de esta Ley, se mantendrá en el Registro por un período de diez (10) años desde que la persona cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra. Una vez transcurra dicho término, el nombre y los datos de la persona serán eliminados del Registro. El Sistema adoptará la reglamentación necesaria para cumplir con lo dispuesto.

[6] El peticionario también señaló que había sido inscrito en el Registro erróneamente ya que en la Sentencia del 29 de diciembre de 1999 no se incluyó como parte de las condiciones la inclusión en el Registro de Ofensores Sexuales.

[7] La Ley 266-2004 derogó la Ley 28-1997. Entre sus disposiciones estableció que la información de la persona convicta por delitos sexuales se mantendría en el Registro por un periodo mínimo de diez años desde que se cumpliera la sentencia impuesta.

(continúa...)

interpretación, en el caso del señor Placer Román el periodo de inscripción en el Registro se extendería hasta el 29 de diciembre de 2015, puesto que cumplió su sentencia el 29 de diciembre de 2005.

El señor Placer Román adujo que esta interpretación constituía una aplicación retroactiva y desfavorable de un estatuto. Argumentó que al utilizar la fecha en que se cumplió su sentencia como punto de partida para el término de diez años se incurriría en "una aplicación *ex post facto* en menoscabo y perjuicio del demandante alterando las condiciones de la pena impuesta y ya cumplida".[8]

A la vista señalada por el Tribunal de Primera Instancia comparecieron, además del peticionario, la Administración de Corrección y el Departamento de Justicia. Las partes estuvieron contestes en que no existía ninguna controversia de hecho y que la única controversia pendiente de dilucidar era si la Ley 266-2004 aplicaba al caso del señor Placer Román.

El Estado Libre Asociado de Puerto Rico (ELA), argumentó que la inscripción en el Registro no es un castigo, sino una medida de protección a las víctimas de delitos sexuales y a la ciudadanía. Por eso, la aplicación de las disposiciones de la Ley 266-2004 al peticionario no puede considerarse una aplicación *ex post facto*. Al aprobarse la Ley 266-2004, el peticionario estaba inscrito

---

[8] Apéndice de *Certiorari,* pág. 62.

en el Registro debido a su convicción por el delito de actos lascivos o impúdicos y porque aún no había extinguido su sentencia. Por tanto, según el ELA, no había transcurrido el término de diez años de inscripción y los funcionarios venían obligados a mantener esa inscripción en el Registro hasta el año 2015, según disponía la Ley 266-2004. Posteriormente, en una moción de sentencia sumaria, el ELA argumentó que el peticionario tenía que presentar su solicitud al Director Administrativo del Sistema de Información de Justicia Criminal antes de acudir a los tribunales, pues ese es el procedimiento administrativo dispuesto en la sección 531(n) de la Ley Núm. 129 de 30 de junio de 1977 para lograr que se elimine un nombre del Registro.[9]

El Tribunal de Primera Instancia desestimó la demanda, con perjuicio, el 27 de septiembre de 2011, en una sentencia notificada el 7 de octubre de 2011. Resolvió que la Ley 266-2004 aplicaba retroactivamente y que el señor Placer Román estaba debidamente incluido en el Registro ya que cumplía con todos los requisitos impuestos. También resolvió que no procedía el *mandamus* porque no había agotado el procedimiento administrativo dispuesto por la sección 531(n) de la Ley Núm. 129 de 30 de junio de 1977 antes de recurrir al tribunal. Por otro lado, concluyó que tampoco se había configurado un deber ministerial del Estado ya que de acuerdo a la Ley 266-

---

[9] 4 LPRA sec. 536.

2004, el término mínimo de diez años aún no se había cumplido.

Inconforme, el peticionario apeló ante el Tribunal de Apelaciones. Señaló que el Tribunal de Primera Instancia había errado al desestimar con perjuicio la petición de *mandamus* y aplicar retroactivamente la Ley 266-2004 y, también, al resolver que había un mecanismo administrativo disponible que no se había agotado. Posteriormente, solicitó al Tribunal de Apelaciones que ordenara la "eliminación de los datos del Apelante del Registro en auxilio de jurisdicción para evitar el daño sustancial e irreparable y las consecuencias adversas que implica para el solicitante la espera del transcurso regular de solución del recurso de Apelación presentado".[10] Argumentó que ciertas enmiendas a la Ley 266-2004 introducidas por la Ley 243-2011 confirmaban el mérito de su solicitud de *mandamus*.[11]

El Tribunal de Apelaciones declaró sin lugar la solicitud de paralización y más tarde confirmó la sentencia del Tribunal de Primera Instancia. A su entender, el caso no planteaba una violación a la protección constitucional contra leyes *ex post facto* porque la ley que crea el Registro no es de naturaleza penal punitiva. El foro apelativo resolvió que el

---

[10] Apéndice de *Certiorari*, pág. 146.

[11] El peticionario resaltó que la Sentencia del Tribunal de Primera Instancia fue notificada y archivada en autos previo a la aprobación de la Ley 243-2011. Apéndice de *Certiorari*, pág. 142.

peticionario fue debidamente incluido en el Registro y que, según la Ley 266-2004, debía permanecer inscrito hasta el 29 de diciembre de 2015. El tribunal intermedio concluyó que el peticionario no había presentado una causa de acción que justificara la concesión de un remedio pues ninguna disposición legal obliga al Estado a eliminar al peticionario del Registro; por tanto, el Estado no incumplió deber ministerial alguno. Por último, al igual que el tribunal recurrido, el Tribunal de Apelaciones determinó que la Ley Núm. 129, *supra*, proveía un remedio administrativo que el peticionario no había agotado.

En reconsideración, el peticionario planteó que el tribunal le debió haber acreditado el tiempo que estuvo registrado mientras cumplía su sentencia en la libre comunidad. También reiteró que las enmiendas introducidas por la Ley 243-2011 respaldaban los méritos de su petición pues restablecían la fecha en que se emite la sentencia como el punto de partida del término de inscripción cuando se concede el beneficio de libertad a prueba, libertad bajo palabra o participación en un programa de desvío, tratamiento o rehabilitación. El Tribunal de Apelaciones se negó a reconsiderar su determinación.

Al recurrir de las decisiones de los tribunales inferiores el señor Placer Román señala que estas implican para él la extensión de las condiciones impuestas por la sentencia, en detrimento de su desarrollo personal y profesional. Argumenta que no se puede aplicar de forma retroactiva el cambio establecido por la Ley 266-2004 para

computar el término de inscripción porque agravaría la pena y extendería las condiciones a las que ha estado sujeto desde que fue juzgado. Además, sostiene que las enmiendas introducidas por la Ley 243-2011 apoyan su solicitud pues estas regresan al punto de partida original para computar el término de registro cuando la condena se cumple en libertad a prueba, libertad bajo palabra o sentencia suspendida, a saber, la fecha en que se dicta la sentencia.[12] Por esta razón, solicita que los cinco años que llevaba inscrito en el Registro antes de aprobarse la Ley 266-2004 se incluyan en el cómputo de los diez años exigidos por ley.

Por otro lado, el peticionario niega que el proceso provisto por la Ley Núm. 129, *supra*, al que aluden el Estado y los tribunales inferiores, sirva para eliminar una inscripción del Registro; más bien permite revisar la información registrada en los bancos de datos del Sistema de Información de Justicia Criminal. De hecho, señala que la reglamentación vigente no dispone procedimiento administrativo alguno para lograr que se elimine un nombre del Registro.[13]

---

[12] Petición de *Certiorari*, pág. 8. El peticionario solicita que la fecha en que se dictó sentencia se tome como punto de partida para calcular el término de inscripción, tal como disponía la Ley 28-1997 y como reestablece la Ley 243-2011. Sin embargo, señala que no se le debe aplicar el tiempo mínimo de inscripción según la nueva clasificación de la Ley 243-2011, ya que ésta aumenta el término a veinticinco años.

[13] El peticionario sostiene que si bien el *Reglamento para el Registro de Personas Convictas por Delitos Sexuales y Abuso contra*

(continúa...)

Por su parte, el ELA sostiene que el *mandamus* no procede pues, según el derecho vigente cuando se presentó la solicitud, el Estado no tenía el deber ministerial de eliminar la información del señor Placer Román del Registro. Afirma el Estado que el Registro no es un castigo y que la ley que lo crea no es de carácter penal; por eso no se activa la protección constitucional contra las leyes *ex post facto*. El ELA argumenta nuevamente que el peticionario debía haber utilizado el procedimiento administrativo provisto en la Ley Núm. 129, *supra,* para eliminar información no autorizada del Registro de Ofensores.[14] Por último, sostiene que la Ley 243-2011 tiene efecto retroactivo pleno. Concluye entonces que, si bien

---

*Menores Ley Núm. 266 de 9 de septiembre de 2004*, Reglamento Núm. 7131, dispone en cuáles situaciones se eliminaría a una persona del Registro, estas no incluyen el proceso administrativo para revisar información establecido en la Ley Núm. 129 de 30 de junio de 1977, 4 LPRA sec. 536. El artículo 9(C) del Reglamento dispone en lo pertinente:

C. Responsabilidades del Sistema de Información de Justicia Criminal (SIJC)

........

3. La información contenida en el Registro solamente podrá ser eliminada de éste bajo las siguientes circunstancias:

a. Si ha transcurrido un período de diez (10) años desde que la persona convicta cumplió la sentencia impuesta (si no es un agresor sexual peligroso).

b. Si la convicción es revocada por un tribunal.

c. Si el convicto recibe un perdón ejecutivo o indulto total.

[14] El ELA alega que toda información que sea mantenida en el registro por más tiempo del establecido por ley constituye información no autorizada y el recurso para eliminar información no autorizada en el Registro es el procedimiento establecido por la Ley Núm. 129, *supra.*

las nuevas enmiendas requieren que el plazo de inscripción se compute a partir de la fecha en que se dicta la sentencia, la duración de dicho plazo es de veinticinco años.[15]

II

Al argumentar que el peticionario tenía disponible un procedimiento administrativo para atender su reclamo, el ELA nos refiere nuevamente al procedimiento dispuesto en la Ley Núm. 129, *supra*. Nuestro análisis de esa Ley y del *Reglamento para el Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores* nos lleva a concluir lo contrario.

La Ley Núm. 129, *supra,* creó el Sistema de Información de Justicia Criminal con el propósito de proveer información completa y correcta a las entidades integrantes del Sistema de Justicia Criminal.[16] Cualquier persona puede presentar una solicitud escrita y jurada ante el Director Administrativo del Sistema alegando que toda o parte de la información recopilada bajo su nombre es incorrecta, incompleta o no está autorizada por ley. Si el Director Administrativo rechaza la solicitud, el reclamante puede solicitar reconsideración ante la Junta

---

[15] Según el ELA, el delito de actos lascivos o impúdicos por el cual fue convicto el peticionario corresponde a la clasificación de ofensor sexual tipo II de la Ley 243-2011. Bajo esta clasificación el plazo mínimo de inscripción en el Registro es de veinticinco años.

[16] 4 LPRA sec. 531.

Ejecutiva en pleno.[17] Sin embargo, este procedimiento sólo permite corregir información incorrecta o no autorizada, mas no permite que la persona impugne la inclusión de su nombre en el Sistema.[18]

Por otro lado, la Ley de 2004 expresamente dispone que la información de la persona sólo puede eliminarse del Registro cuando se cumple el término de 10 años, se revoca la convicción o se recibe un perdón ejecutivo o indulto total.[19] Por imperativo de esta legislación, el *Reglamento para el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores Ley Núm. 266 de 9 de septiembre de 2004* (Reglamento 7131), vigente al momento en que el peticionario presentó la petición de *mandamus*, establece en su artículo 9(C)(3) que

> (3) La información contenida en el Registro solamente podrá ser eliminada de éste bajo las siguientes circunstancias:
>
> > (a)  Si ha transcurrido un periodo de diez (10) años desde que la persona convicta cumplió la sentencia impuesta (si no es un agresor sexual peligroso).
> >
> > (b)  Si la convicción es revocada por un tribunal.
> >
> > (c)  Si el convicto recibe un perdón ejecutivo o indulto total.[20]

---

[17]  4 LPRA sec. 531n.

[18]  Íd.

[19]  4 LPRA sec. 536(c). La Ley de 1997 no contemplaba que se eliminara la información una vez se revocara la convicción o se recibiera un perdón ejecutivo o indulto total.

[20]  *Reglamento para el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores Ley Núm. 266 de 9 de septiembre de*

(continúa...)

Evidentemente, la Ley de 2004 y el Reglamento 7131 establecen unas razones categóricas para eliminar la información de las personas registradas. Estas son, el transcurso del periodo de diez años desde que se cumplió la sentencia, la revocación de la convicción y el perdón ejecutivo o indulto total. El procedimiento de revisión administrativa que provee la Ley Núm. 129, *supra*, no está incluido en el Reglamento 7131. Por lo tanto, el señor Placer Román no tenía otro remedio disponible en ley para lograr que se eliminara su información del Registro.

En cuanto a los demás elementos que deben considerarse antes de expedir el recurso de *mandamus*, tenemos constancia de que el señor Placer Román presentó su solicitud en varias ocasiones, pues fue precisamente la negativa de los diferentes funcionarios a eliminar su nombre del Registro lo que dio pie a la presentación de su demanda. Por otra parte, conceder el remedio solicitado no afectaría derechos de terceros. Ahora bien, para evaluar el interés público involucrado y si efectivamente existía el deber ministerial reclamado por el señor Placer Román debemos examinar la legislación aplicable al *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores*.

III

A

---

*2004*, Reglamento Núm. 7131, Policía de Puerto Rico, 2006, Art. 9(C)(3), pág. 9.

La primera legislación pertinente, la Ley 28-1997, fue aprobada en el 1997 con el propósito de crear un registro de las personas que se reintegran a la libre comunidad después de haber sido convictas por delitos sexuales violentos y por delitos de abuso contra menores.[21] Esta ley fue promulgada para proteger a la comunidad contra la conducta constitutiva de abuso sexual y abuso contra menores.[22] Según su declaración de política pública el Registro no tiene un propósito punitivo, sino que es "un medio para garantizar la seguridad, protección y bienestar general".[23]

En términos generales, la Ley 28-1997 estableció quiénes tenían la obligación de registrarse, así como sus deberes y obligaciones y los de las autoridades del orden público. La Ley también reguló la disponibilidad de la información contenida en el Registro. El inciso (a) del artículo 3 de la Ley 28-1997, *supra*, establece que deberán inscribirse

las personas que resulten convictas por alguno de los siguientes delitos o su tentativa: violación, seducción, sodomía, **actos lascivos o impúdicos**.[24]

Bajo esta ley, el Tribunal de Primera Instancia venía llamado a ordenar la inclusión de los datos del convicto

---

[21] El Art. 2 de la Ley 28-1997 define delitos sexuales violentos y delitos contra menores como los delitos enumerados en el Art. 3 de la Ley.

[22] Art. 1, Ley 28-1997, *supra*.

[23] Íd.

[24] 4 LPRA sec. 536(a).

en el Registro durante el acto de lectura de sentencia.[25] Una vez registrada, la persona tenía que notificar a la Policía de Puerto Rico cualquier cambio en su dirección, además de actualizar la información en el Registro anualmente.[26]

La Ley de 1997 dispuso un término de diez años durante el cual el Estado podía conservar la información de la persona registrada. Este término se contaría desde que la persona convicta "cumplió la sentencia de reclusión, desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que es liberada bajo palabra".[27] Transcurrido este término, "el nombre y los datos de la persona serán eliminados del Registro. El Sistema adoptará la reglamentación necesaria para cumplir con lo dispuesto".[28]

Como podemos apreciar, la Ley de 1997 reconoce dos puntos de partida para calcular el término de diez años de inscripción. Si se ordena la reclusión, este término comenzará a contar una vez se cumpla la sentencia. Ahora bien, si se otorga el beneficio de libertad a prueba o de libertad bajo palabra el término se contará desde que la persona comienza a cumplir la sentencia o desde que es

---

[25] 4 LPRA sec. 536(b). El Ministerio Público será el encargado de notificarle al Sistema de Información de Justicia Criminal la información de la persona convicta requerida por ley.

[26] 4 LPRA sec. 536(c).

[27] Íd.

[28] Íd.

liberada bajo palabra.

Esta distinción es afín al propósito de la Ley y la política pública que ésta persigue: prevenir la comisión de delitos sexuales violentos y de abuso de menores mediante el registro de información sobre las personas convictas una vez estas se reintegren a la libre comunidad. La Ley de 1997 reconoce que las personas que cumplen su sentencia en libertad a prueba o bajo palabra se reintegran a la libre comunidad antes de completar su sentencia. Por eso, en esos casos, el término de diez años se computará desde que se comienza a cumplir la sentencia o desde que la persona es puesta en libertad bajo palabra.[29]

El señor Placer Román fue convicto de actos lascivos o impúdicos bajo la ley vigente al momento de los hechos, la Ley 28-1997. Como vimos, esa ley requería que las personas convictas por ese delito fueran inscritas en el Registro. Además, el artículo 5 de la ley de 1997 imponía la inscripción en el Registro como condición para poder disfrutar del beneficio de libertad a prueba. Es más, al crear el Registro, la Ley Núm. 28-1997 enmendó la Ley de Sentencia Suspendida y de Libertad a Prueba para fijar la obligación de tener registrado el nombre, dirección y otros datos personales del convicto como condición al

---

[29] Esta distinción es significativa pues, como veremos, la Ley 266-2004, *supra*, solamente permite que el cómputo del término de diez años se haga a partir de la fecha en que la persona cumple la totalidad de la sentencia.

disfrute de la libertad a prueba. Es evidente, pues, que el señor Placer Román fue inscrito en el Registro conforme a la Ley de 1997, aun cuando la sentencia del Tribunal de Primera Instancia no lo dispuso expresamente como condición. Por tanto, la inscripción del señor Placer Román en el Registro data desde el 29 de diciembre de 1999, día en que fue sentenciado y comenzó a cumplir la sentencia en la libre comunidad. Según dispone la Ley de 1997 desde entonces comenzó a transcurrir también el término de diez años de inscripción.

B

La Ley 28-1997 fue derogada en el 2004. La nueva Ley 266-2004, *supra,* reafirma las consideraciones de política pública de la Ley 28-1997, incluye los mismos delitos que la ley anterior y exige las mismas obligaciones a las personas sujetas al Registro.[30] El tiempo durante el cual el Estado deberá mantener la información de la persona en el Registro también es el mismo. Sin embargo, la Ley de 2004 modificó el momento a partir del cual se debe comenzar a contar el tiempo de inscripción. Según el artículo 5 de la Ley, el período de inscripción para toda persona convicta deberá contarse desde que la persona cumple el término de su sentencia. Esta disposición omitió la distinción reconocida en el estatuto derogado entre las personas que cumplen su sentencia en una institución penitenciaria y aquellas que lo hacen en la libre

---

[30] Exposición de Motivos, Ley 266-2004, *supra*.

comunidad, quienes, bajo la ley anterior, tenían la obligación de inscribirse en el Registro desde antes de haberse extinguido su sentencia. Evidentemente, al establecer la fecha de cumplimiento de la sentencia como punto de partida exclusivo, la Ley de 2004 creó una situación desventajosa para estas personas, aumentando significativamente el término de su inscripción en el Registro pues estarían inscritas desde que se dictó su sentencia hasta la fecha de aprobación de la nueva Ley, más los diez años posteriores a la extinción de su sentencia. Ese es, precisamente, el caso del señor Placer Román.

Al aprobarse la Ley de 2004, el señor Placer Román cumplía su sentencia en la libre comunidad, bajo el régimen de libertad a prueba. Su nombre y datos personales ya habían estado inscritos durante cinco años. Como no habían transcurrido los seis años de su sentencia, quedó registrado nuevamente.[31] Sin embargo, en lugar de cinco años adicionales hasta completar el término estatutario de diez años, la nueva Ley le exige permanecer en el Registro por un nuevo término de diez años que comenzará el día en que cumpla la totalidad de su sentencia. En otras palabras, como resultado de la aplicación de la Ley 266-2004, el nombre, la dirección y otros datos personales del señor Placer Román permanecerán en el Registro un total de quince años, los cinco años que habían transcurrido antes

---

[31] Art. 3(d) de la Ley 266-2004.

de la aprobación de la Ley, más los diez años que comenzarían a transcurrir cuando cumpliera su sentencia.

C

La aprobación de la Ley 243-2011 parece haber atendido esta situación. La Ley de 2011 enmienda el estatuto de 2004 para atemperarlo a la Ley federal 109-248, de 27 de julio de 2006, conocida como *Adam Walsh Child Protection and Safety Act of 2006* o *Sex Offender Registration and Notification Act* (SORNA).[32] Esta ley federal dispone una revisión completa de los estándares nacionales para el registro y notificación de los ofensores sexuales con el fin de lograr un registro más efectivo que brinde mayor seguridad al público. También impone unas obligaciones mínimas a los estados y territorios de los Estados Unidos de América.[33] Al adoptar los requisitos mínimos de la ley SORNA, el artículo 2 de la Ley 243-2011 estableció tres clasificaciones para los ofensores sexuales basadas en el delito sexual cometido, enmendando de forma sustancial las obligaciones de la persona sujeta al Registro.[34]

El término de inscripción y las obligaciones del convicto corresponden entonces al tipo de ofensa sexual.

---

[32] Exposición de Motivos, Ley 243-2011, aprobada el 14 de diciembre de 2011.

[33] Íd.

[34] Íd. Según la Ley, un ofensor sexual es aquella persona que ha sido convicta por un delito sexual o su tentativa o conspiración. 4 LPRA sec. 536(7).

El artículo 5 de la Ley 243-2011 establece que el término mínimo para el Ofensor Sexual Tipo I es de 15 años, el Ofensor Sexual Tipo II deberá estar inscrito durante 25 años y el Ofensor Sexual Tipo III, durante toda la vida.[35] Se elimina de esta forma el término uniforme de diez años y se sustituye por un término específico según la gravedad de los delitos. Bajo esta clasificación, todas las personas convictas de un delito sexual o de abuso contra menores tendrán que estar registradas por un término mayor al establecido anteriormente.

Por otro lado, la Ley de 2011 restituye el estado de derecho original en cuanto al momento desde el cual se comienza a contar el término de inclusión en el Registro. Nuevamente, se distingue entre las personas que cumplen su sentencia en una institución correccional y aquellas que cumplen su sentencia en la libre comunidad. El término comienza a contar desde que la persona es excarcelada, en el primer caso, y, en el segundo, desde que se **dicta la sentencia**, resolución o determinación para participar en los programas de libertad a prueba, libertad bajo palabra o programas de desvío, tratamiento o rehabilitación, y se notifica su inclusión al Registro.

Sin lugar a dudas, las enmiendas más notables son las que clasifican a los ofensores sexuales en tres tipos. En cumplimiento con la ley federal, el artículo 2 de la Ley establece tres tipos de ofensores sexuales. En lo que

---

[35] 4 LPRA 536(c).

refiere al delito de actos lascivos, este no se encuentra en la lista de delitos cuya convicción requiere que la persona sea inscrita en el Registro como Ofensor Tipo I.[36] El inciso 9 del artículo 2 de la Ley de 2011 dispone que la clasificación de Ofensor Sexual Tipo II corresponderá a aquellas personas convictas por actos lascivos o impúdicos o su tentativa o conspiración, "cuando la víctima fuere un menor de edad".[37] Por último, será Ofensor Sexual Tipo III toda persona que resulte convicta de "**actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años.**"[38]

En resumen, la Ley 243-2011 categoriza a las personas convictas por el delito de actos lascivos de acuerdo a la edad de la víctima. Si la víctima era menor de edad, pero no menor de dieciséis años, el convicto será un Ofensor Sexual Tipo II. Si la víctima no ha cumplido los dieciséis (16) años, el convicto será registrado como un Ofensor Sexual Tipo III. **La Ley 243-2011 no contempla una categoría de Ofensor Sexual para las personas convictas por el delito de actos lascivos cometido contra una persona mayor de edad.**

IV

El ELA sostiene que el señor Placer Román es un Ofensor Sexual Tipo II, por lo cual debe estar inscrito

---

[36] 4 LPRA sec. 536 (8).

[37] 4 LPRA sec. 536(9).

[38] 4 LPRA sec. 536 (10).

durante 25 años a partir de la fecha en que se dictó la sentencia en 1999. Sin embargo, luego de analizar el texto de la Ley 243-2011, resulta evidente que el delito por el cual el señor Placer Román fue inscrito en el 1999 fue eliminado de las tres clasificaciones de Ofensores Sexuales que deben inscribirse en el Registro. El delito de actos lascivos o impúdicos, cuando la víctima es mayor de edad, no activa la obligación de inscribir al convicto en el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores*.

La obligación de estar registrado en el caso del señor Placer Román proviene del Artículo 3 inciso (e) de la Ley 243-2011: "[q]uedarán registradas las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada".[39] Como vimos, la Ley 243-2011 también eliminó la obligación que impuso la Ley 266-2004 de calcular el término de inscripción desde que concluye la sentencia y ordenó que se compute dicho término desde que la persona comienza a cumplir su sentencia suspendida.

El señor Placer Román no debe estar inscrito en el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores* pues el delito por el cual fue convicto — actos lascivos o impúdicos contra una persona mayor de edad — fue eliminado de los delitos que

---

[39] El artículo 15 de la Ley de 2011 establece que las disposiciones beneficiosas de la ley podrán tener efecto retroactivo. Véase Pueblo v. Hernández García, 186 DPR 656 (2012).

deben incluirse en el Registro. De igual forma, tampoco le aplican los términos de registro de la Ley 243-2011, pues cuando esta entró en vigor ya los diez años de registro que imponía la Ley 128-1997 se habían cumplido, en el 2009. Consecuentemente, el señor Placer Román tiene derecho a que su información se elimine del Registro. Para ello se requiere que un tribunal ordene la eliminación de la información pues, como expusimos, el Reglamento 7131 no contempla la situación particular del señor Placer Román.

En este caso, eliminar la información del señor Placer Román es un deber ministerial que impone nuestro ordenamiento y no acepta discreción alguna por parte de los actores gubernamentales responsables. Procede, pues, la expedición del *mandamus* ordenando que se elimine la inscripción del señor Placer Román en el Registro.

V

Por los fundamentos antes expuestos, estoy conforme con la decisión de la mayoría de este Tribunal de revocar la sentencia del Tribunal de Apelaciones, expedir el *mandamus* y ordenar eliminar al señor Placer Román del *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores*.


Liana Fiol Matta
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Placer Román

      Peticionario

        v.

                      CC-2012-0949

Estado Libre Asociado de
Puerto Rico

      Recurrido

Opinión de conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 1 de octubre de 2015.

Estoy de acuerdo con que el Sr. Carlos E. Placer Román no debe estar inscrito en el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores (Registro). Para llegar a esa conclusión es innecesario discutir si bajo la ley actual, Ley Núm. 243-2011, 4 LPRA sec. 536 et seq., una persona que cometió el delito de actos lascivos debe incluirse en el Registro.

El Art. 2 de la Ley Núm. 243-2011, 4 LPRA sec. 536a, establece claramente que "[q]uedarán registradas las personas que al momento de la aprobación bajo la Ley 28-1997, según enmendada".

Se desprende de este artículo que hay que acudir a la Ley 28-1997, 4 LPRA sec. 535 et seq. (ed. 2003), para ver si el señor Placer Román estaba obligado bajo los términos de esa ley a permanecer inscrito en el Registro.

El señor Placer Román entró al Registro bajo la Ley Núm. 28-1997, supra. Ese estatuto establecía que el Estado podía conservar durante diez años la información sobre el ofensor. Art. 5, Ley Núm. 28-1997, 4 LPRA sec. 535c (ed. 2003). En los casos en que el ofensor cumpliera su sentencia bajo el beneficio de libertad a prueba, el término se comenzaba a computar desde que comenzó a cumplir la sentencia y no desde que terminó de cumplirla. Id. El señor Placer Román fue sentenciado el 29 de diciembre de 1999 bajo el beneficio de libertad a prueba. Desde ese momento comenzaron a transcurrir los 10 años. Esos 10 años se cumplieron en diciembre de 2009, dos años antes de que se aprobara la Ley Núm. 243-2011, supra. Desde ese momento cesó la obligación del señor Román de figurar inscrito en el registro.

En conclusión, al momento en que se aprobó la Ley Núm. 243-2011, supra, el señor Placer Román ya no estaba obligado a aparecer en el registro bajo la Ley 28-1997, supra. Por tal razón, su información se debe borrar.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos E. Placer Román

 Peticionario

    v.                           CC-2012-949      *Certiorari*

Estado Libre Asociado de
Puerto Rico y otros

      Recurridos

Opinión concurrente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 1 de octubre de 2015.

Concurro porque considero que debimos pautar que la Ley Núm. 243-2011, *infra*, requiere que una persona convicta por actos lascivos o impúdicos contra un adulto forme parte del Registro de Personas Convictas por Delitos Sexuales, Violentos y Abusos Contra Menores (Registro). Además, la Sentencia emitida en el día de hoy debió estar fundamentada, a fin de pautar el derecho aplicable en el cómputo para la exclusión del Registro

I

El Sr. Carlos Placer Román fue sentenciado el 29 de diciembre de 1999, a cumplir una pena de seis años de cárcel por cometer el delito de actos lascivos o impúdicos en contra de una

adulta, según tipificado en el Art. 105(d) del derogado Código Penal de 1974, 33 LPRA ant. sec. 4067.[40] El Tribunal de Primera Instancia ordenó la suspensión de la pena de reclusión y le otorgó el beneficio de una sentencia suspendida de conformidad con la Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 LPRA sec. 1027. Así, el peticionario gozó del beneficio de libertad a prueba el 27 de diciembre de 1999.[41] Desde ese momento, el señor Placer Román fue inscrito en el Registro.

Luego de transcurridos diez años desde que se le inscribió en el Registro, el señor Placer Román solicitó

---

[40] Para conocer los elementos del delito por el cual fue sentenciado el peticionario, debemos dirigirnos al Art. 105(d) del Código Penal de 1974, que lee como sigue:

> Art. 105
>
> Actos lascivos o impúdicos.
>
> Toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con otra será sancionada con pena de reclusión según más adelante se dispone si concurrieran cualesquiera de las siguientes modalidades:
>
> . . . .
>
> (d) Si la víctima fuere compelida al acto mediante el empleo de medios engañosos que anulen o disminuyan sustancialmente, sin su conocimiento, su capacidad de resistencia.33 LPRA ant. sec. 4067.

[41] Mediante una *Certificación de Expiración de Libertad a Prueba* expedida el 9 de febrero de 2006, la Administración de Corrección hizo constar que el señor Placer Román disfrutó de libertad a prueba desde el 27 de diciembre de 1999. Igualmente, se certificó que el periodo de la libertad a prueba expiró el 29 de diciembre de 2005, habiéndose cumplido así la sentencia.

al Departamento de Corrección que eliminara su nombre e información del mismo, conforme a la derogada Ley Núm. 28-1997, 4 LPRA ant. sec. 535 *et seq.* (2003) (Ley Núm. 28-1997).[42] No obstante, su solicitud fue denegada porque no había transcurrido el término estatuido en la Ley Núm. 266-2004, 4 LPRA sec. 536 *et seq.* (2010) (Ley Núm. 266-2004) vigente a ese momento. Según el personal del Departamento de Corrección, el peticionario debía permanecer inscrito en el Registro hasta el 29 de diciembre de 2015, pues el término de inscripción se contaba desde que la persona cumplió su sentencia y no desde que gozó del privilegio de libertad a prueba.

En consecuencia, el señor Placer Román presentó una demanda sobre *mandamus* contra el Estado Libre Asociado (Estado), el Departamento de Justicia, la Administración de Corrección, la Policía de Puerto Rico y la Junta de Libertad Bajo Palabra. Solicitó que, entre otras cosas, se ordenara a los demandados eliminar su nombre e información del Registro. Adujo que al momento en que se le sentenció estaba en vigor la derogada Ley Núm. 28-1997 que excluía del Registro el delito por el cual fue sentenciado. En la alternativa, alegó que bajo el supuesto de que la referida ley requiriera su inscripción en el Registro, procedía la eliminación de su nombre por haber transcurrido diez años desde que se le concedió el beneficio de sentencia suspendida, según establecía la

---

[42]La Ley Núm. 28-1997 fue derogada con la aprobación de la Ley Núm. 266-2004.

Ley Núm. 28-1997. Al respecto, el señor Placer Román arguyó que el término de diez años venció el 29 de diciembre de 2009 y que la aplicación de la Ley Núm. 266-2004 era *ex post facto* porque agravaba la pena al extender el tiempo en que estaba obligado a permanecer inscrito en el Registro.

Consiguientemente, el Tribunal de Primera Instancia celebró una vista en la cual las partes convinieron que no existían controversias de hechos, sino de derecho respecto a cuál era la ley aplicable. Más adelante, el Estado presentó una *Moción en cumplimiento de orden y de desestimación*, y una *Moción Suplementando la Moción de Desestimación*. Solicitó que se desestimara la demanda sobre *mandamus* por sostener que no existía una causa de acción que justificara la concesión de un remedio. Sostuvo que no aplica la doctrina de leyes *ex post facto* porque la Ley Núm. 266-2004 no era de carácter punitivo y su único fin es brindar información que provea seguridad a las víctimas de delitos sexuales y a la ciudadanía en general. Asimismo, aseveró que: (1) no existía alguna razón en derecho para que se expidiera el *mandamus,* pues el peticionario fue debidamente incluido en la lista de ofensores sexuales; (2) no existía un deber ministerial de eliminar su información del Registro; y (3) el peticionario no agotó el procedimiento administrativo establecido en el Sistema de Información de Justicia Criminal. Por lo anterior, planteó que el peticionario debió presentar una reclamación escrita y jurada ante el

Director Administrativo, en la cual hiciera la alegación correspondiente.

Tras ponderar la postura de las partes, el Tribunal de Primera Instancia desestimó con perjuicio la demanda por entender que no existía una reclamación que justificara la concesión de un remedio. Razonó que: (1) el señor Placer Román fue debidamente inscrito en el Registro; (2) al momento de la aprobación de la Ley Núm. 266-2004 se encontraba convicto por actos lascivos en un programa de desvío; y (3) no se había extinguido la sentencia. De esta forma, ese foro concluyó que, conforme a la citada legislación, el término de diez años para excluirlo del Registro se cumpliría el 29 de diciembre de 2015, pues el mismo comenzó a computarse a partir del momento en que cumplió la totalidad de la pena que se le impuso y no desde que estuvo en libertad bajo palabra. Además, el tribunal primario decretó que la Ley Núm. 266-2004 no tenía un propósito punitivo por lo que entendió que no viola el principio de leyes *ex post facto*. Así pues, el foro primario denegó el auto de *mandamus* por entender que las agencias demandadas no incumplieron un deber ministerial y que existía un procedimiento administrativo adecuado en ley que debía ser agotado por el señor Placer Román.

Ante tal determinación, el señor Placer Román acudió al Tribunal de Apelaciones. Arguyó que el foro primario erró al: (1) desestimar la demanda sobre *mandamus* con perjuicio; (2) resolver que debía agotar mecanismos

administrativos; y (3) aplicar retroactivamente el cómputo del periodo de inscripción en el Registro, conforme a la Ley Núm. 266-2004. Además, solicitó que se ordenara la eliminación de su nombre e información del Registro. Subsiguientemente, el peticionario presentó una *Moción en Auxilio de Jurisdicción* ante el foro intermedio, en la cual planteó que la Ley Núm. 266-2004 se enmendó mediante la Ley Núm. 243-2011 y que tales enmiendas confirmaban sus alegaciones sobre los méritos para expedir el auto de *mandamus*. No obstante, el Tribunal de Apelaciones declaró *no ha lugar* la referida solicitud.

Posteriormente, el Tribunal de Apelaciones confirmó la sentencia del Tribunal de Primera Instancia. Concluyó que el Tribunal de Primera Instancia no erró al desestimar la demanda sobre *mandamus* bajo el razonamiento de que el Estado no incumplió un deber ministerial. De igual forma, resolvió que: (1) la derogada Ley Núm. 28-1997 incluía en la lista de los delitos que debían aparecer en el Registro el de actos lascivos o impúdicos por el cual el peticionario fue sentenciado; (2) la Ley Núm. 266-2004 mantenía este delito como uno de los cuales debería aparecer inscrito el peticionario en el Registro; (3) la ley aplicable para el cómputo del periodo de inscripción en el Registro era la Ley Núm. 266-2004; (4) no procedía la doctrina de la prohibición de aplicación de leyes *ex post facto*, porque esa ley no es una de naturaleza penal; y (5) existía un procedimiento

administrativo para canalizar las reclamaciones del señor Placer Román.

Inconforme, el peticionario recurrió ante este Tribunal mediante un auto de *certiorari*. Señaló que la aplicación retroactiva de la Ley Núm. 266-2004 era *ex post facto* porque agravaba la pena y extendía tanto la sentencia como las condiciones a las que estuvo sujeto desde que fue juzgado. Además, reiteró que las enmiendas establecidas por la Ley Núm. 243-2011 apoyaban su solicitud en cuanto a la forma de cómputo del término en que debía aparecer su información en el Registro. Igualmente, el peticionario alegó que no se proveía un procedimiento para eliminar la inscripción del Registro. De igual forma, señaló que el Reglamento Núm. 7131, *Reglamento para el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menore*s, no establecía el procedimiento administrativo para conseguir que se elimine su nombre e información del Registro.[43]

Por su parte, el Estado arguyó que era improcedente expedir el *mandamus* porque no existía un deber ministerial que cumplir. Señaló que no procedía activar la protección constitucional en contra de la aplicación de leyes *ex post facto* porque el Registro no tenía un propósito punitivo y la ley que lo creó no era de naturaleza penal. Insistió en que existía un remedio

---

[43]Reglamento para el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores Ley Núm. 266 de 9 de septiembre de 2004, Reglamento 7131, Policía de Puerto Rico, 2006.

administrativo disponible para eliminar la información del Registro. Finalmente, adujo que la Ley Núm. 243-2011 tenía efecto retroactivo pleno y que, por consiguiente, el señor Placer Román era un ofensor sexual II, cuyo término de inscripción debía computarse a partir de la fecha en que se dictó la sentencia con una duración de veinticinco años.

Este Tribunal mediante Resolución de 21 de marzo de 2013 expidió el recurso de *certiorari* ante nuestra consideración. Procedo a exponer mi análisis.

## II

### A. Auto de *mandamus*

#### i

El auto de *mandamus* es un recurso altamente privilegiado que se expide para ordenar a cualquier persona natural o jurídica, a una corporación o a un tribunal judicial de inferior jerarquía que cumpla un acto que está dentro de sus deberes o atribuciones. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421.

Este recurso extraordinario se utiliza para exigir el cumplimiento de un deber ministerial que no admite discreción en su ejercicio, sino que es mandatorio. AMPR v. Srio. Educación, ELA, 178 DPR 253, 263 (2010); Acevedo Vilá v. Aponte Hernández, 168 DPR 443, 454-455 (2006); Álvarez de Choudens v. Tribunal Superior, 103 DPR 235, 242 (1975); Rodríguez Carlo v. García Ramírez, 35 DPR 381, 384 (1926). Por lo que, si la ley prescribe y define

lo que debe cumplirse, no hay espacio para el juicio o discreción. Por otra parte, se resolvió que este deber ministerial no tiene que, necesariamente, estar expreso en la ley, sino que está sujeto a la interpretación judicial. AMPR v. Srio. Educación, ELA, *supra*, pág. 264; Álvarez de Choudens v. Tribunal Superior, *supra*, pág. 242.

La expedición de este recurso extraordinario no procede cuando hay un remedio en el curso ordinario de la ley, ya que su propósito no es reemplazar los remedios legales existentes, sino suplir la falta de ellos. AMPR v. Srio. Educación, ELA, *supra*, pág. 267. Por tanto, con ciertas excepciones, la parte que solicita el auto de *mandamus* debe establecer que realizó un requerimiento previo al funcionario para que cumpliera el acto o deber ministerial.[44] Noriega v. Hernández Colón, 135 DPR 406, (1994); Dávila v. Superintendente de Elecciones, 82 DPR 264, 275 (1960); Suárez v. Corte, 65 DPR 850, 857-858 (1946).

### ii

En lo que atañe a la controversia ante nos, debemos analizar si existe un procedimiento administrativo que agotar para solicitar el *mandamus.* Sobre el particular, la Ley Núm. 129 de 30 de junio de 1977 (Ley Núm. 129), 4 LPRA sec. 531 *et seq.*, creó el Sistema de Información de

---

[44]Para una discusión de las excepciones al requerimiento, véase Noriega v. Hernández Colón, 135 DPR 406, 448 (1994); Espina v. Calderón, Juez, 75 DPR 76 (1953); Martínez Nadal v. Saldaña, 33 DPR 721 (1924).

Justicia Criminal (Sistema) para recopilar información sobre individuos procesados criminalmente como adultos. La información recopilada está relacionada con los eventos del procedimiento criminal pasado y presente con cualquier disposición que resultara de los mismos, tales como: arresto, radicación de la acusación, sentencia y reclusión. 4 LPRA sec. 531. Ésta dispone que con relación a la base de datos cualquier persona puede presentar una reclamación escrita y jurada ante el Director Administrativo en la que alegue que la información en el Sistema es incorrecta, incompleta o no está autorizada por ley. 4 LPRA sec. 531n. De esta forma, las disposiciones contenidas en la Ley Núm. 129 atienden exclusivamente la información que pertenece al Sistema, y no contemplan un mecanismo para solicitar la exclusión del Registro. Ello es así, porque al aprobarse la Ley Núm. 129 sólo se atendió la necesidad de crear una base de datos sobre las personas procesadas criminalmente y no creó el Registro, cuyo origen es posterior a la Ley Núm. 129.

El Registro se promulgó al aprobar la Ley Núm. 28-1997. Mediante este Registro se hace constar la dirección de las personas convictas por actos constitutivos de abuso sexual y abuso contra menores. En éste se incluyen los datos personales de éstas y otros esenciales por determinado tiempo. El propósito de ello consiste en proteger a la ciudadanía y a las víctimas de delitos sexuales, por razón de que se entiende necesario conocer

el paradero de personas que sufren de una enfermedad o desorden mental de índole sexual. A su vez, la Ley Núm. 28-1997 dispuso que una vez transcurra el término por el cual debe estar registrada la persona, sus datos serán eliminados del Registro. Para ello, el Sistema vendría obligado a adoptar la reglamentación necesaria. La Ley Núm. 28-1997 fue derogada al aprobarse la Ley Núm. 266-2004 con el fin de promover un estatuto de mayor cobertura.

A tenor con tales cambios, se promulgó el Reglamento Núm. 7131, el cual en su Art. 9 establece las responsabilidades del Sistema y cómo se podrá eliminar la información contenida en el Registro, al disponer, lo siguiente:

> C. Responsabilidades del Sistema de Información de Justicia Criminal (SIJC)
>
> . . . .
>
> 3. La información contenida en el Registro **solamente** podrá ser eliminada de éste bajo las siguientes circunstancias:
>
> a. Si ha transcurrido un período de diez (10) años **desde que la persona convicta cumplió la sentencia impuesta** (si no es un agresor sexual peligroso).
>
> b. Si la convicción es revocada por un tribunal.
>
> c. Si el convicto recibe un perdón ejecutivo o indulto total. (Énfasis suplido).

No obstante, el Reglamento Núm. 7131 no dispuso procedimiento alguno para que se eliminara el nombre de

una persona inscrita en el Registro.[45] Mucho menos, establece un procedimiento adecuado para situaciones, como la del señor Placer Román, en que una persona inscrita solicite la exclusión de su nombre del Registro por haber cumplido el término del Registro desde que goza del privilegio de libertad a prueba o bajo palabra. Por tanto, ni la Ley Núm. 129 ni el Reglamento, proveen un proceso para atender el reclamo del señor Placer Román, quien solicitó a las autoridades que eliminaran su nombre del Registro. Estas acciones fueron infructuosas, ya que el personal del Registro le informó que el periodo de diez años que debía permanecer en éste no había transcurrido. Es tras la denegatoria de dichos requerimientos que el peticionario instó la demanda sobre *mandamus.*

Siendo ello así, no hay un procedimiento administrativo que agotar y resta evaluar si existe un deber ministerial para que proceda la solicitud de *mandamus.* Por los fundamentos que se presentan a continuación, concluyo que sí. Veamos.

---

[45]El Reglamento Núm. 7131 fue derogado por el Reglamento Núm. 8447 aprobado el 28 de enero de 2014, Reglamento para el Registro de personas convictas por delitos sexuales y abuso contra menores. Este fue posterior al recurso de autos. No obstante, acoge los cambios introducidos por la Ley Núm. 243-2011, *infra.* Sin embargo, tampoco dispone un proceso para solicitar la eliminación del Registro. Ello, pues ésta no es automática y será ordenada por un tribunal de acuerdo con las disposiciones de la Ley Núm. 243-2011.

**B. Ley Núm. 28 de 1 de julio de 1997**

En el caso de autos, al momento de resultar convicto el señor Placer Román estaba vigente la Ley Núm. 28-1997 que, como discutimos, creó el Registro.[46] El propósito del Registro, al amparo de esa ley, era mantener informadas a las autoridades gubernamentales y a la ciudadanía en general sobre el paradero de aquellas personas que fueron convictas de delitos sexuales violentos o abuso en contra de menores, y que se reintegraron a la libre comunidad. Art. 1 de la Ley Núm. 28-1997. En ese Registro debía incluirse: el nombre, dirección, fotografía y otra información personal de quienes por ley debían inscribirse en el mismo.

La Asamblea Legislativa estatuyó que el propósito de la Ley Núm. 28-1997 y del Registro no era punitivo, sino un "medio para garantizar la seguridad, protección y bienestar general" ante la posibilidad de que la persona convicta incurriera en la conducta delictiva nuevamente. Art. 1 de la Ley Núm. 28-1997. A tales efectos, el Art. 3(a) de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535a (2003), indicaba quiénes debían aparecer inscritos en el

---

[46]Esta legislación se adoptó a la luz de la ley federal *Jacob Wetterling Crimes Against Children and Sexually Violent Offender Reistration Act*, 42 U.S.C. § 14071, *et seq*. Mediante dicha ley, se recomendaba a los estados y a los territorios de los Estados Unidos crear un registro, con el propósito de que las personas convictas por cometer ciertos delitos sexuales y en contra de menores estuviesen obligadas a inscribirse antes de reintegrarse a la libre comunidad. Véase, Segundo Informe del P. de la C. 540, 19 de junio de 1997, 1era Sesión Ordinaria, 13era Asamblea Legislativa, pág. 10.

Registro. Entre ellos, se encontraban las personas que cometían actos lascivos o impúdicos.

Por consiguiente, la Ley Núm. 28-1997 expresamente ordenó la inscripción en el Registro de las personas que fueran convictas por actos lascivos o impúdicos de conformidad con el derogado Código Penal de Puerto Rico de 1974. Por otra parte, en el Art. 5 la referida ley disponía que la persona convicta se mantendría "en el Registro por un período mínimo de diez (10) años desde que la persona cumplió la sentencia de reclusión, **desde que comenzó a cumplir la sentencia bajo el beneficio de libertad a prueba** o desde que es liberada". (Énfasis suplido). 4 LPRA ant. sec. 535c (2003).

Como se puede apreciar, la información de la persona convicta debía mantenerse en el Registro por diez años computados de una de estas formas: (1) desde que la persona convicta cumpliera la sentencia de reclusión; o (2) desde que la persona convicta comenzara a cumplir la sentencia bajo el beneficio de libertad a prueba o bajo palabra. Además, nótese que esta Ley dispuso, como condición para el disfrute del beneficio de libertad a prueba, el cumplimiento con los requisitos del Registro.

En virtud de lo anterior y conforme con la Ley Núm. 28-1997 vigente al momento en que el señor Placer Román delinquió y cuando se dictó su sentencia de culpabilidad por el delito de actos lascivos o impúdicos, no cabe duda de que el peticionario fue debidamente inscrito en el Registro. A tenor con la legislación vigente para ese

entonces, el término de los diez años de inscripción en el Registro comenzó a cumplirse el 29 de diciembre de 1999, día en que se dictó la sentencia de culpabilidad y se le concedió el beneficio de sentencia suspendida bajo libertad a prueba.

No obstante, esta ley fue derogada y sufrió varias enmiendas las cuales discutimos a continuación.

### C. Ley Núm. 266 de 9 de septiembre de 2004

La Asamblea Legislativa promulgó la Ley Núm. 266-2004 con el fin de atemperar a nuestras realidades el Registro y en la medida de lo posible anticipar y prevenir situaciones que pudieran incidir en el maltrato o abuso contra niños, niñas y envejecientes.[47] Véase, Exposición de motivos, Ley Núm. 266-2004, 4 LPRA ant. sec. 536 n (2010). Así, se estableció que en el Registro

---

[47]Según la Exposición de Motivos esta legislación se adoptó para cumplir con unas guías de una legislación federal que requería el registro de personas convictas de delitos sexuales y de abuso de los menores, una vez la persona se reintegrara a la libre comunidad:

> La Ley Pública Núm. 103-322 de 13 de septiembre de 1994, mejor conocida como "Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program", requiere que los estados, incluyendo a Puerto Rico, adopten legislación a fin de que las personas convictas por cierto tipo de delito de naturaleza sexual y contra menores cumplan con la obligación de incluir su información en un registro creado para esos fines; esto por un término de por lo menos diez (10) años. El propósito primordial de esta legislación federal es proteger a la ciudadanía de los convictos de delitos sexuales y de aquéllos que abusan contra menores mediante el establecimiento del requisito de registrarse cuando el convicto se reintegre a la libre comunidad.

se harían constar los datos personales e información concerniente a las personas convictas requeridas por esta Ley, cuando se reintegren a la libre comunidad. Íd.

Al igual que su predecesora, la Ley Núm. 266-2004, en su Art. 3(a), dispuso que serían registradas las personas convictas por cometer actos lascivos o impúdicos.[48] De igual forma, en el Art. 5 de la Ley Núm. 266-2004 se estableció que la información de la persona convicta debía estar inscrita en el Registro por un periodo de diez años.[49] No obstante, la Asamblea Legislativa alteró el cómputo del tiempo por el cual debía estar inscrita la persona convicta al disponer que "se mantendrá en el Registro por un período mínimo de diez (10) años **desde que cumplió la sentencia impuesta**". (Énfasis suplido). 4 LPRA ant. sec. 536c (2010).

Por lo tanto, a tenor con esta legislación se requería que se mantuviese inscrita la información de la persona convicta por diez años desde que cumplía la sentencia. Es decir, a diferencia de su antecesora, la Ley Núm. 266-2004 no proveía un cómputo distinto para el término de los diez años de inscripción en el Registro cuando la persona convicta cumple su sentencia en la libre comunidad bajo algún beneficio de sentencia

---

[48]Véase, 4 LPRA ant. sec. 536a, enmendado (2010).

[49]Véase 4 LPRA ant. sec. 536c (2010).

suspendida.[50] Ciertamente, el texto de la Ley Núm. 266-2004 tiene un efecto adverso y desfavorable sobre el tiempo requerido para mantenerse en el Registro, al extenderlo. Esto es así, pues la persona convicta, durante la vigencia de la Ley Núm. 28-1997, que cumplía el término de los diez años desde que se le concedió el beneficio de sentencia suspendida, ahora tenía la obligación de aparecer en el Registro por diez años adicionales que comenzarían a transcurrir luego de cumplir su sentencia.

Sin embargo, durante el transcurso de los hechos procesales reseñados, y tal como mencionáramos anteriormente, la Asamblea Legislativa enmendó la Ley Núm. 266-2004 mediante la Ley Núm. 243-2011, 4 LPRA sec. 536 *et seq.* (Suplemento Acumulativo 2014). Como consecuencia, se reformó el periodo requerido de inscripción en el Registro, así como varios artículos que

---

[50]Es importante aclarar que ni de la Exposición de Motivos ni del historial legislativo surge el fundamento en que se basó la Asamblea Legislativa para establecer el cómputo del periodo de los diez años a partir de que se cumpla la sentencia impuesta, sin contemplar un cómputo distinto para las personas convictas acogidas al beneficio de sentencias suspendidas al Registro. No obstante, del historial legislativo y la Exposición de Motivos se puede concluir que lo anterior es un contrasentido, pues permite que una persona convicta por delitos sexuales o abuso en contra de menores esté en la libre comunidad, bajo el beneficio de libertad a prueba o libertad bajo palabra sin estar obligada a inscribirse en el Registro. Sin duda alguna, de esta forma se derrota el propósito de la Ley Núm. 266-2004 que es mantener informada a la ciudadanía sobre las personas convictas de los delitos mencionados una vez se han integrado a la libre comunidad. No obstante, la Asamblea Legislativa atendió esta situación al promulgar la Ley Núm. 243-2011, según expondremos más adelante.

son pertinentes a la presente controversia. A continuación se expone el análisis correspondiente.

**D. Ley Núm. 243 de 14 de diciembre de 2011**

i

La Asamblea Legislativa aprobó esta legislación con el propósito de atemperar el Registro a las disposiciones de la ley federal intitulada *Adam Walsh Child Protection and Safety Act of 2006*, también conocida como *Sex Offender Registration and Notification Act* (SORNA, por sus siglas en inglés), Ley Pub. Núm. 109-248, 27 de julio de 2006, 120 Stat. 587.[51] La mencionada ley federal está dirigida a brindar mayor protección a las víctimas de delito sexual. Exposición de Motivos, Ley Núm. 243-2011. A su vez, esta legislación federal estableció unas guías mínimas de cumplimiento para el Registro de personas convictas de delitos sexuales y abuso en contra de menores. Para cumplir con su propósito, la Legislatura introdujo ciertas enmiendas para añadir nuevas definiciones y para disponer sobre los deberes de la persona sujeta al registro y de las agencias concernientes.

Al interpretar la Ley Núm. 243-2011, este Tribunal concluyó que era de aplicación retroactiva toda enmienda producida por el estatuto que beneficiara a un ciudadano,

---

[51]Véase Exposición de Motivos, Ley Núm. 243-2011, *supra*.

cuyo nombre se encuentre inscrito en el Registro. Véase Pueblo v. Hernández García, 186 DPR 656, 679 (2012).[52]

Este Tribunal razonó que la inscripción en el Registro es impuesta como consecuencia del incumplimiento de una ley penal, por lo que es parte de su sentencia. Por tanto, "la persona que se encuentra inscrito [sic] en el Registro está cumpliendo con parte de lo que es -por mandato de ley- su sentencia penal". Íd., pág. 677. Como señala la profesora Dora Nevares-Muñiz "se considera *ex post facto* toda ley con que en su relación con el delito **o con sus consecuencias** altere la situación del acusado en su perjuicio". (Énfasis nuestro). Dora Nevares Muñiz, Código Penal de Puerto Rico, 2013, Instituto para el Desarrollo del Derecho, Inc.

Siendo ello así, nos corresponde analizar las disposiciones pertinentes de la Ley Núm. 243-2011 al caso ante nuestra consideración.

ii

Específicamente, debemos evaluar si bajo la Ley Núm. 243-2011 el señor Placer Román tiene derecho a que se elimine su nombre e información del Registro. Además, es menester evaluar si éste venía obligado a registrarse. Entendemos en la afirmativa.

---

[52]El Art. 15 establece que "[e]sta Ley comenzará a regir [sic] inmediatamente después de su aprobación. Los incisos (f) y (g) del Art. 4 tendrán efecto prospectivo. Las demás disposiciones podrán tener efecto retroactivo". 4 LPRA sec. 536 n. (Suplemento Acumulativo 2014).

Mediante la Ley Núm. 243-2011, la Asamblea Legislativa añadió "nuevas definiciones de los conceptos convictos, delito específico contra un menor, delito sexual, empleado, estudiante, ofensor sexual, ofensor sexual tipo I, II y III, menor y residencia".[53] Cónsono con el interés de adaptar el Registro a lo dispuesto en SORNA, la Legislatura adoptó los conceptos de ofensor sexual tipo I, II y III, las cuales están mayormente dirigidos a crímenes cuyas víctimas son personas menores de edad.[54]

Sin embargo, el propósito del Registro se ha mantenido desde su origen, por lo que no debe interpretarse que la intención legislativa fue dejar desprovistos de este tipo de protección a las personas que fueron víctimas de delitos sexuales y que no son clasificadas como menores de edad, independiente de que no se haya contemplado una categoría de ofensor sexual para estas personas. Ello, resulta cónsono con que las personas convictas por la comisión de delitos lascivos o impúdicos en contra de un adulto, están obligadas a inscribirse en el Registro, desde que se constituyó el

---

[53]Informe positivo sobre el Sustitutivo del Senado al P. del S. 769, P. del S. 771, P. de la C. 89, P. de la C. 740, P. de la C. 1298 y P. de la C. 1953, Cámara de Representantes de 10 de noviembre de 2011, 5ta Sesión Ordinaria, 16ta Asamblea Legislativa.

[54]Menor de edad se define como "toda persona que no haya cumplido los dieciocho (18) años de edad". 4 LPRA sec. 536(11) (Suplemento Acumulativo 2014).

mismo.[55] La nueva Ley Núm. 243-2011 no ha cambiado tal obligación. A tales efectos, el Art. 2 de la Ley Núm. 243-2011 enmendó el Art. 3 de la Ley Núm. 266-2004 para que lea como sigue:

> Se crea y se provee para el mantenimiento de un Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores en el Sistema de Información de Justicia Criminal. Serán registradas en el mismo:
>
> (a) Los Ofensores Sexuales Tipo I, los Ofensores Sexuales Tipo II y los Ofensores Sexuales Tipo III.
>
> (b) Las personas que hayan sido o sean convictas por delitos similares, o sus tentativas o conspiraciones, a los enumerados en el **Artículo 2** de esta Ley por un tribunal federal, estatal, extranjero o militar, y se les haya garantizado el debido proceso de ley en el país que fueron convictos, que se trasladen a Puerto Rico para establecer su residencia, o que por razón de trabajo o estudio se encuentren en Puerto Rico, aunque su intención no sea la de establecer domicilio en la Isla.
>
> (c) Las personas convictas que disfruten de libertad bajo palabra, condicionada, libertad a prueba, o algún método alterno de cumplimiento de la pena de reclusión, por alguno de los delitos o sus tentativas, según enumerados en el **Artículo 2** de esta Ley.
>
> (d) Las personas que al momento de la aprobación de esta Ley se encuentren recluidas o participando de algún programa de desvío, tratamiento o rehabilitación de la Administración de Corrección, o que posterior a la aprobación de esta Ley sean sometidos a dichos programas, por la comisión de alguno de los delitos enumerados o sus tentativas o conspiraciones en el **Artículo 2** de esta Ley. Disponiéndose que en estos casos, una vez el acusado cumpla con las condiciones impuestas

---

[55] Véanse, Art. 3(a) de la Ley Núm. 28-1997, 4 LPRA ant. sec. 535a (a) (2010) y Art. 3(a) de la Ley Núm. 266-2004, 4 LPRA ant. sec. 536a (a) (2010).

por el Tribunal, y éste ordene el sobreseimiento de la acción criminal, según lo disponen las leyes pertinentes a dichos programas, el Sistema eliminará la inscripción del acusado en el Registro aquí establecido.

(e) Quedarán registradas las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada.

(f) Las personas que hayan sido convictas por cualquier delito de los enumerados en el Artículo 2 de esta Ley, que ya extinguieron la pena impuesta y no se encuentren registrados ni cumpliendo pena alguna por dichos delitos, si resultan convictas por la comisión de cualquier delito grave que no sea un delito sexual de los enumerados en el **Artículo 2** de esta Ley. No obstante, en estos casos, se acreditará para efectos de la duración de la inscripción en el Registro, el tiempo transcurrido desde el cumplimiento de su sentencia, o método alterno de cumplimiento de la pena de reclusión, hasta su inclusión en el Registro aquí establecido.

(g) Las personas que hayan sido convictas por cualquiera de los delitos enumerados en el **Artículo 2** de esta Ley y hagan alegación de culpabilidad por cualquiera de los delitos o sus tentativas o conspiración. En estos casos será compulsorio y no objeto de alegaciones pre-acordadas, el ingreso de la persona convicta al Registro". (Énfasis suplido). 4 LPRA sec. 536a (Suplemento Acumulativo 2014).

Tras una lectura del texto de la Ley Núm. 243-2011, se observa que las personas convictas, obligadas a inscribirse en el Registro, no son únicamente aquellas comprendidas bajo la categoría de ofensores sexuales tipo I, II y III. Además de éstos, la mencionada ley exige que se incluyan en el Registro las personas convictas por los delitos enumerados en el Art. 2. En el referido artículo se define lo que constituye: el delito específico contra

menor de edad, **el delito sexual**, el ofensor sexual, ofensor sexual I, ofensor sexual II y ofensor sexual III.

Al definir el término de "delito sexual", en el Art. 2 se contemplan los casos en que las víctimas son personas menores de edad y cuando estas son personas adultas. El delito sexual incluye en lo pertinente:

> (3) "Delito Sexual"- En general, excepto por lo dispuesto en los sub-incisos (a) y (b), **incluye** lo siguiente:
>
> **(i) un delito que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona;**
>
> (ii) un delito específico contra un menor de edad;
>
> ...
>
> Disponiéndose que:
>
> ...
>
> (b) **Un delito que incluya conducta sexual consentida no es un delito sexual para propósitos de esta Ley, si la víctima es un adulto, a menos que dicho adulto esté bajo la custodia legítima del ofensor al momento del delito".** Énfasis suplido.[56]

De lo expuesto surge que el delito sexual incluye aquel "que tenga como elemento constitutivo un **acto sexual o conducta sexual con otra persona**", 4 LPRA sec. 536 (3) (Suplemento Acumulativo 2014). Por lo tanto se entiende que en esta definición está incluida **cualquier persona que no sea menor de edad,** a menos que se trate de conducta consentida, siempre y cuando el adulto no esté

---

[56]Véanse, Art. 1 de la Ley Núm. 243-2011 que enmienda el Art. 2 de la Ley Núm. 266-2004. 4 LPRA sec. 536 (Suplemento Acumulativo 2014).

bajo la custodia legítima de su ofensor. Nótese que la Asamblea Legislativa estableció un inciso específico y aparte para víctimas que son menores de edad.

Al constituirse el "delito sexual" con actos o conducta sexual contra otra persona es sencillo razonar que en esta definición se incluyó el delito de actos lascivos o impúdicos, al igual que cualquier otro delito de naturaleza sexual en contra de un adulto, siempre y cuando no aplique la excepción antes discutida.

Como consecuencia, en virtud de la Ley Núm. 243-2011 deben registrarse las personas convictas por actos o conducta sexual contra otra persona que sea mayor de edad o las que incurran en delitos específicos contra un menor de edad. Las personas así convictas son ofensores sexuales. En lo particular, se incluye a quienes: (1) estén recluidos o participando de algún programa de desvío, tratamiento o rehabilitación de la Administración de Corrección, o que posterior a la aprobación de la Ley Núm. 243-2011 sean sometidos a dichos programas;[57] (2) disfruten de libertad bajo palabra, condicionada, libertad a prueba, o algún método alterno de cumplimiento

---

[57]Véase 4 LPRA sec. 536a (d) (Suplemento Acumulativo 2014).

de la pena de reclusión;[58] (3) hagan alegación de culpabilidad,[59] entre otras.

Además, la ley establece claramente que se mantendrán en el Registro aquellas personas obligadas a inscribirse bajo la Ley Núm. 28-1997, según enmendada en donde se incluye, tal como se indicó anteriormente, las que resulten convictas por actos lascivos o impúdicos a tenor con el Art. 105 del derogado Código Penal de 1974.[60]

Igualmente, al amparo de las definiciones que provee la Ley Núm. 243-2011 en cuanto a los términos de ofensor sexual, ofensor sexual tipo I, ofensor sexual tipo II y ofensor sexual tipo III se incluye conducta sexual delictiva contra adultos. Cónsono con esto, la Ley Núm. 243-2011 definió al ofensor sexual como "aquel individuo que ha sido convicto por un delito sexual o su tentativa o conspiración". 4 LPRA sec. 536 (7) (Suplemento Acumulativo 2014). Así, el estatuto no estableció una edad específica de la víctima para que una persona convicta sea considerada como ofensor sexual, lo determinante es que haya cometido un delito sexual contra

---

[58]Véase 4 LPRA sec. 536a(c)(Suplemento Acumulativo 2014).

[59]Véase 4 LPRA sec. 536a(g)(Suplemento Acumulativo 2014).

[60]Véase 4 LPRA sec. 536a (e)(Suplemento Acumulativo 2014). Entendemos que esta disposición resultaba suficiente para determinar si el señor Placer Román debía inscribirse en el Registro sin necesidad de abordar cuáles delitos son los que requieren inscripción al amparo de la Ley Núm. 243-2011.

otra persona. Esto, distinto a los conceptos de ofensores sexuales tipo I, II y III, en donde la mayoría de sus incisos se establecen como víctimas a personas menores de edad.

Por todo lo anterior, concluyo que el delito de actos lascivos o impúdicos en contra de un adulto está contemplado en la definición de delitos sexuales. La Ley Núm. 243-2011 no eliminó el delito de actos lascivos o impúdicos cometidos en contra de un adulto de la lista de delitos que obligan a la persona convicta a inscribirse en el Registro. Se ha reiterado que "cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa". Pueblo v. Jesús Delgado, 155 DPR 930, 941 (2001); Pueblo v. Rexach Benítez, 130 DPR 273, 302 (1992). Una interpretación contraria obviaría que la Ley Núm. 243-2011 no alteró la política pública de proteger a todos los sectores de la sociedad de delitos sexuales. Por el contrario, el legislador expresamente reiteró, en la Exposición de Motivos de la Ley Núm. 243-2011, su objetivo de "fortalecer y aumentar la efectividad del registro para la seguridad del público".

Aclarado que la Ley Núm. 243-2011 no eliminó el delito de actos lascivos o impúdicos de la lista de los que deben registrarse, es necesario analizar si el señor Placer Román tiene derecho a ser eliminado del Registro.

III

La Ley Núm. 243-2011 dispone que la eliminación del Registro no es automática y ésta debe ser autorizada por el foro judicial correspondiente. De igual forma, establece que el término mínimo que una persona debe estar registrada es de diez años. 4 LPRA sec. 536c (Suplemento Acumulativo 2014). Asimismo, la Ley Núm. 243-2011 introdujo otra enmienda con relación al cómputo del periodo que debe estar registrada la persona convicta.

A tales efectos, el término de inclusión en el Registro comenzará a contar desde que el ofensor sexual sea excarcelado tras cumplir su sentencia.[61]. **Sin embargo, en los casos en que la persona convicta cumpla su sentencia en la libre comunidad, bajo el beneficio de libertad a prueba, libertad bajo palabra, programa de desvío, tratamiento o rehabilitación, el término de inscripción comenzará a transcurrir desde que se emitió la sentencia, resolución o determinación para participar en esos programas y se notifique su inclusión al Registro.**[62] Por consiguiente, mediante esta enmienda se armoniza la forma de computar el periodo de inscripción en el Registro con lo establecido en la Ley Núm. 28-1997. Es decir, el nuevo estatuto revierte la forma de cumplir la obligación a dos instancias. La primera, cuando el ofensor sexual está encarcelado, deberá registrarse una

---

[61]Véase 4 LPRA sec. 536c (Suplemento Acumulativo 2014).

[62]Véase 4 LPRA sec. 536c (Suplemento Acumulativo 2014).

vez cumpla la sentencia por el periodo dispuesto en el estatuto. Empero, cuando éste disfruta del privilegio de cumplir la pena en libertad bajo palabra, programa de desvío, tratamiento o rehabilitación, su obligación de inscribirse en el Registro comienza desde que goza de ese privilegio.

Es por esto que el Estado alega que el peticionario debe permanecer inscrito en el Registro desde que se emitió la sentencia en el año 1999, a partir de que éste fue puesto en libertad a prueba. No obstante, el Estado aduce que la inscripción debe durar veinticinco años debido a que sostiene que el señor Placer Román es un ofensor sexual tipo II.[63] Sin embargo, la ley establece que el "ofensor sexual tipo II" es aquel que resulte convicto por ciertos delitos, la tentativa de éstos o su conspiración **"cuando la víctima es un menor de edad"**. (Énfasis suplido). 4 LPRA sec. 536 (9)(Suplemento Acumulativo 2014). De esta forma, cuando el estatuto hace referencia al delito de actos lascivos o impúdicos en cualquiera de las modalidades contempladas en el Código Penal de 1974 es cuando la víctima es menor de dieciocho años.[64]

---

[63]Véase 4 LPRA sec. 536c (Suplemento Acumulativo 2014).

[64]Advertimos que el señor Placer Román tampoco es un ofensor sexual tipo I y mucho menos tipo III, ya que éste sólo incluye a personas convictas por actos lascivos o impúdicos cuando la víctima no ha cumplido los dieciséis años de edad. Véanse, 4 LPRA sec. 536 (10)(a), (c) (Suplemento Acumulativo 2014).

Ante tal realidad, y siendo la víctima en el caso de autos un mayor de edad, no estamos ante un ofensor sexual tipo II, pues esta definición sólo incluye el delito de actos lascivos, su tentativa o conspiración cuando la víctima es menor de edad. Por ende, la alegación del Estado de que el señor Placer Román tiene la obligación de registrarse por un término de veinticinco años es errónea.

IV

De acuerdo con el derecho antes discutido, la Ley Núm. 243-2011 requiere que se mantengan en el registro aquellas personas que debían estar inscritas al amparo de la derogada Ley Núm. 28-1997, justo al momento en que se promulgó esta nueva ley. En el caso del señor Placer Román, éste tenía la obligación de estar registrado por haber cometido el delito de actos lascivos contra un adulto por el término de diez años desde que gozó del privilegio de libertad a prueba. Igual obligación le impuso la Ley Núm. 243-2011 al requerir la inscripción de ofensores sexuales como el señor Placer Román y al imponer la obligación de que se registrasen todas las personas obligadas por la Ley Núm. 28-1997.

A tenor con la Ley Núm. 28-1997, éste habría cumplido con el término estatutario de inscripción en el Registro en diciembre de 2009. De igual forma, con la aprobación de la Ley Núm. 243-2011 se enmendó la Ley Núm. 266-2004 a los fines de disponer que cuando la persona disfrute de los beneficios de libertad a prueba el

término de inclusión en el Registro se computa desde la determinación para que la persona convicta participe en el programa. Por lo tanto, el peticionario cumplió en exceso el término de diez años que le requería la Ley Núm. 28-1997 e incluso un término mayor al término mínimo que dispone la Ley Núm. 243-2011.[65]

Por consiguiente, al aplicar esta disposición al presente caso, se observa que el señor Placer Román no está obligado a permanecer en el Registro y que su nombre debe ser eliminado.

Así pues, conforme dispone la Ley Núm. 243-2011, una vez el acusado cumple con las condiciones procede que se elimine la inscripción en el Registro.[66] Por tanto, existe un deber ministerial de eliminar el nombre y la información del señor Placer Román del Registro.

IV

Por los fundamentos expuestos, concluyo que la Ley Núm. 243-2011 no eliminó la obligación de inscribirse en el Registro a aquellas personas que cometen actos lascivos o impúdicos contra un adulto. No obstante, estoy

---

[65]Recordemos que la Ley Núm. 243-2011 no contempla un término por el cual los ofensores sexuales obligados a registrarse bajo la Ley Núm. 28-1997 deben registrarse y tampoco establece una categoría para aquellos que no fueron incluidos en una de las tres categorías definidas en el estatuto, como lo es el caso de actos lascivos e impúdicos contra un adulto. Siendo ello así, entiendo que ante esa laguna a las personas convictas en estas circunstancias el cómputo que aplica es el impuesto por la Ley Núm. 28-1997.

[66]Véase 4 LPRA sec. 536b (Suplemento Acumulativo 2014).

de acuerdo en que procede el *mandamus* para ordenar que el señor Placer Román sea eliminado del Registro por los fundamentos anteriormente expuestos.


                                    Luis F. Estrella Martínez
                                         Juez Asociado